LIBERTY TRUST COMPANY *vs.* ABEL S. PRICE & others.

Suffolk. January 25, 1927. — May 21, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract,* What constitutes. *Evidence,* Extrinsic affecting writing. *Bills and Notes,* Consideration, Equitable defence.

A director and owner of 765 shares of the capital stock of a Massachusetts trust company, of whose property and business the commissioner of banks had taken possession, joined with stockholders, who, with him, owned two thirds of the capital stock, in executing an agreement under which a protective committee was formed representing such stockholders with power to act in their behalf. The committee arranged with a second trust company to purchase the assets of the first company and to assume its liabilities. The purchaser, because it was not certain

that the assets purchased would be sufficient to satisfy and discharge the liabilities, required a guaranty fund, a subscription to which the defendant signed, in the sum of $400,000, "otherwise no subscriber to be bound"; and after the expiration date of the subscription the defendant delivered his note for $10,000, payable to the trustees, to the second trust company, receiving from it a receipt stating that it was so delivered for delivery to the trustees "under agreement and declaration of trust to be executed . . . to be returned . . . if agreement and declaration not executed." At the time of the giving of such note, the entire $400,000 had not been subscribed, but oral promises had been made which, with those in writing, made the amount subscribed in excess of that sum, and the chairman of the protective committee in good faith assured the purchasing trust company that subscriptions aggregating that amount had been obtained. In reliance upon that assurance, a sale and a declaration of trust were made consummating the transaction and providing, among other things, that the guaranty fund was to be paid to the purchasing trust company if necessary to indemnify it against loss, or, if not necessary for that purpose, was to be returned to the subscribing stockholders. The documents were signed by the protective committee and there was nothing in either expressly providing that liability of subscribers to the guaranty fund was dependent or conditional upon raising $400,000. Owing to the fact that there were some repudiations by guarantors, the final amount of the guaranty fund was $392,500. The sale was completed before the purchasing company learned of this, but it did not disaffirm the sale on that account. Even with the payment upon the guaranty fund, the purchasing trust company lost over $179,000 on the transaction. In an action by the purchasing trust company as indorsee upon the note for $10,000 above described, it was *held*, that

(1) The receipt was a contract providing for the delivery of the note to the trustees under the terms therein stated;

(2) Evidence was not admissible to show, in substance, that the defendant delivered the note with the oral understanding that under no condition was he to be bound by it;

(3) Release of the defendant from liability to assessment upon his stock was a valid consideration for the note;

(4) In the circumstances, the defendant was not released from liability on the note because of the deficiency in the guaranty fund;

(5) As a matter of law, there were no equities in favor of the defendant against the payees or the plaintiff.

BILL IN EQUITY, filed in the Superior Court on June 12, 1924, and afterwards amended, described in the opinion.

The following issues were framed for trial by the jury:

"1. Did the defendant, Abel S. Price, receive consideration for the note sued on? If so, what and to what extent?

"2. What sum, if any, has the defendant, Abel S. Price, paid on said note?

"3. Was there any agreement between the defendant, Abel S. Price, and the payees and/or the plaintiff in this suit that the defendant, Abel S. Price, was not to be held liable for the payment of the note?

"4. Were there any equities existing prior to the transfer of this note to the plaintiff, in favor of the defendant, Abel S. Price, against the payees? If so, what?

"5. Did the plaintiff in this suit take said note with full knowledge of all equities existing in favor of the defendant, Abel S. Price, against the payees thereof?"

The issues were referred to an auditor and afterwards were tried before *Qua,* J., upon the auditor's report and other evidence. The auditor reported that, upon the plaintiff's making the requirement as to the guaranty fund described in the opinion, "the protective committee obtained from defendant Price and other stockholders of the Fidelity Trust Company written subscriptions for various sums, to be paid to plaintiff on or before March 23, 1921, in cash, checks on the Fidelity Trust Company, or securities or notes acceptable to plaintiff, to be held for the purpose above stated by three trustees, to be named, one by plaintiff, one by the protective committee and the third by the two thus chosen, the aggregate amount to be at least $400,000, otherwise no subscriber to be bound."

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered the jury to find on the first issue as stated in the opinion; on the second issue to answer, "Nothing"; on the third issue to answer, "No"; on the fourth issue to answer, "There were no such equities"; and on the fifth issue to answer, "The plaintiff took the note after maturity and if there had been any equities existing in favor of the defendant, the plaintiff would be deemed to have had full knowledge thereof."

The defendant Price alleged exceptions to the exclusion of the evidence described in the opinion and to the answers ordered to the first and to the fourth issues.

*H. Stockton, Jr.,* for the plaintiff.

*W. S. Thompson & H. Finn,* for the defendant Abel S. Price, submitted a brief.

CROSBY, J.   This is a bill in equity to establish a claim of
the plaintiff; and to reach and apply certain property in pay-
ment of a promissory note, made by the defendant Price in
the sum of $10,000, of which the plaintiff is the indorsee and
present holder.   Jury issues were framed in the Superior
Court.   The case was referred to an auditor, who filed a
report; the case then was tried before a jury.   The facts are
complicated and need not be referred to in detail as they
are fully set forth in the auditor's report.   There was no
conflict in the evidence and the auditor so states.

It appears that in the year 1920 the commissioner of
banks took possession of the assets of the Fidelity Trust
Company, a Massachusetts corporation.   The defendant
Price then was a director of that company and owned seven
hundred sixty-five shares of its capital stock.   Thereafter,
the holders of more than two thirds of the stock, including
Price, executed a protective agreement under which a pro-
tective committee was formed representing such stock-
holders with power to act in their behalf.   The committee
arranged with the plaintiff to purchase the assets of the
Fidelity Trust Company and to assume its liabilities upon
certain terms and conditions.   As the plaintiff was not cer-
tain that the assets would be sufficient to satisfy and dis-
charge the liabilities, to reimburse it for any losses it might
sustain it required the stockholders of the Fidelity Trust
Company to raise a guaranty fund of $400,000 in cash or
securities.   The note in suit was given at the request of the
protective committee by Price as a part of the guaranty
fund.   If the liabilities of the Fidelity Trust Company had
not been assumed and paid, Price might have been subject
to a substantial liability as a stockholder.   Although the
subscriptions to the guaranty fund originally amounted to
over $400,000, yet owing to the fact that some of them were
later repudiated, the final amount of the fund was $392,500
in cash and securities of which the note of Price was a part.
The sale to the plaintiff was completed before it learned that
$400,000 in subscriptions had not been received, but it did
not disaffirm the sale on that account.

To consummate the sale two agreements were executed: The first was an agreement of sale by the commissioner of banks to the plaintiff of all the assets of the Fidelity Trust Company except its franchise and the right to enforce personal liability of the stockholders, and in consideration therefor the plaintiff assumed and has paid all the debts of the Fidelity Trust Company. The second was an agreement and declaration of trust between the protective committee, the plaintiff, and Allan H. Sturges representing the plaintiff, Guy W. Currier, representing the protective committee, and W. Rodman Peabody selected by the other two, as trustees; the purpose of the declaration of trust was to carry out certain obligations therein set forth. The assets of the Fidelity Trust Company were divided into four classifications and listed in the agreement of sale in schedules marked (a), (b), (c) and (d). Assets listed in schedule (a) were taken over by the plaintiff at their face value; those in schedule (b), at agreed figures; those in schedule (c) at a tentative value, which in most cases was less than the face value; and those in schedule (d) were conveyed to the trustees under the declaration of trust, to hold and liquidate the same and apply the proceeds from time to time during a period of three years, so far as necessary, to indemnify the plaintiff for any loss sustained by it by reason of the failure of assets in schedule (c) to liquidate at their tentative values as so listed. At the end of three years, the trust was to be terminated, and any remaining property sold and the proceeds paid to the plaintiff so far as necessary to indemnify it against loss on account of its assumption of liabilities. The guaranty fund, which had been conveyed to the trustees under the declaration of trust, or whatever remained thereof, was also to be paid to the plaintiff if necessary to indemnify it against loss, or, if not necessary for that purpose, was to be returned to the subscribing stockholders.

At the end of the three-year period the trustees had liquidated the assets in schedule (d) so far as possible; and it appeared that the entire guaranty fund would have to be paid over to the plaintiff, and that after such payment there would be a loss to the plaintiff of at least $179,500. The

trustees turned over the remaining assets in schedule (d) and what remained of the guaranty fund to the plaintiff, including the note in suit. These transfers were made with the consent of the protective committee who represented the defendant and all the subscribers to the guaranty fund.

The defendant Price will hereafter be referred to as the defendant. His first exception was to the admission of the auditor's report. This exception has been waived.

The evidence on the jury issues consisted solely of the auditor's report and oral evidence introduced by the defendant. The evidence was not in conflict with the findings made by the auditor.

The second exception relates to the exclusion of a part of a certain offer of proof. The judge allowed the following part of the offer: "We offer to prove by this witness [the defendant] that the note of . . . ($10,000) was requested by Mr. Sturges to make up the total amount of . . . ($400,000); that this witness stated he would not give the note; that he would be liable for payment thereof; and Mr. Sturges stated to him that the assets of the Fidelity Trust Company were sufficient so that there will be no liability therefor, but that the note was required to carry the transaction through for the transfer of the assets." The remainder of the offer was as follows: "and that if the note could be given for that purpose, to complete the . . . ($400,000), that payment would not be demanded of Mr. Price but that the note would be returned to him by the trustees at the end of the three-year period. In consequence of that, Mr. Price stated that he would sign the note and turn it over to the trustees but under no condition that he was to be bound to pay it, because he wasn't obliged to make it, and he was doing it as a voluntary contribution to help out the transaction." This was excluded "on the ground that it is in substance an offer to prove by oral evidence matter directly contradictory to the terms of the writing, Exhibit B, annexed to the auditor's report . . . ." Exhibit B is as follows: "Boston, Mass. Mar. 24, 1921 Rec'd of Abel S. Price note for $10,000 dated Mar. 24, 1921 to order of Allan H. Sturges, G. H. Currier and W. R. Peabody, Trustees, to be delivered to the trustees

under agreement and declaration of trust to be executed by George M. York et al and Liberty Trust Company the same to be returned to Price if agreement and declaration not executed.  LIBERTY TRUST CO.  ALLAN H. STURGES, Treasurer."  The offer of proof was rightly excluded; it tended to prove a conditional delivery of the note inconsistent with the written agreement; it was an attempt to vary its terms by a contemporaneous oral agreement, and tended to show by parol a condition in direct contradiction to the written agreement.

It was contended by the defendant that the offer was admissible on the ground that a receipt in writing may be controlled by parol evidence.  Although Exhibit B is a receipt for the note, yet in substance it is something more.  It is a contract providing for the delivery of the note to the trustees under the terms therein stated.  The oral evidence excluded tended to show that the note was not to be paid according to its tenor; it was plainly inadmissible.  *Wakefield* v. *Stedman*, 12 Pick. 562.  *Wright* v. *Morse*, 9 Gray, 337. *Brown* v. *Cambridge*, 3 Allen, 474.  *Zielmann* v. *Copelof*, 232 Mass. 393.  *Pelonsky* v. *Wattendorf*, 255 Mass. 558.

The defendant rested without introducing any evidence with respect to that portion of the offer of proof held admissible by the judge.

The first and fourth issues framed for the jury were as follows:

"(1) Did the defendant, Abel S. Price, receive consideration for the note sued on?  If so, what and to what extent?"

"(4) Were there any equities existing prior to the transfer of this note to the plaintiff, in favor of the defendant, Abel S. Price, against the payees?  If so, what?"

As to the first issue the judge directed the following answer: "Yes.  The consideration for the note sued on consisted of" (1) "The assumption by the payees of the obligation as trustees to receive the note as part of the guaranty fund and the obligation on their part to administer said guaranty fund and the other assets in their hands and to perform the duties undertaken by them in accordance with the agreement and declaration of trust annexed to the auditor's report as

'Exhibit D' and their performance of said obligations"; (2) "The purchase by the Liberty Trust Company of the assets of the Fidelity Trust Company and the obligations assumed by said Liberty Trust Company under the agreement annexed to the auditor's report as 'Exhibit C'"; and (3) "The advantage to the defendant in having the Fidelity Trust Company released from its financial straits by the sale of its assets to the Liberty Trust Company in the manner described in the auditor's report and the relief of the defendant from the dangers of an assessment on his stock."

The defendant was a stockholder and director of the Fidelity Trust Company, and in view of its financial condition he was likely to be charged with a stockholder's liability in a substantial amount in the event that the Liberty Trust Company did not assume and pay its debts as he held seven hundred sixty-five shares. The Liberty Trust Company relied on the guaranty fund, a part of which was the defendant's note. The release from liability of the defendant from an assessment on his stock was a valid consideration for the note. *Crosier* v. *Crosier*, 215 Mass. 535. *Prudential Trust Co.* v. *Moore*, 245 Mass. 311. *Rome* v. *Gaunt*, 246 Mass. 82, 94. *International Trust Co.* v. *Wattendorf*, 256 Mass. 323.

Exhibit B provided that the note should be returned to the defendant "if agreement and declaration not executed." It is not disputed that the agreement and declaration were in fact executed. Besides, the raising of the guaranty fund was for the benefit of the Liberty Trust Company and could be waived by it; and the record shows that it was waived as to the deficiency, and the sale was completed.

It appeared that, although the aggregate amount of the guaranty fund was to be at least $400,000, "otherwise no subscriber to be bound," the written subscriptions, including that of the defendant, did not amount to $400,000 but that there were in addition oral promises to contribute which, with the written subscriptions, amounted to $404,-500; that the note was not given until after the expiration of the date of the defendant's subscription agreement; and that the chairman of the protective committee, which represented the defendant and the other subscribing stock-

holders, told Mr. Sturges, the vice-president and treasurer of the plaintiff, that subscriptions aggregating $400,000 had been obtained. The plaintiff, relying on this statement, executed the agreement of sale and the declaration of trust which contained a recital that $400,000 had been raised. Both instruments were signed by the protective committee. There is nothing in either which made liability of subscribers to the guaranty fund dependent or conditional upon raising $400,000, nor can such a condition be implied therefrom. The defendant is not relieved from liability on the note because of the deficiency in the guaranty fund. It is found that the chairman of the committee acted in good faith and believed that the full amount would be deposited in the fund. To hold otherwise would be inequitable and unjust and would result in the plaintiff being obliged to suffer loss by reason of its reliance on the statement of the protective committee while acting for the defendant.

Although in an action upon a promissory note brought by the payee or by one who holds it subject to any equities which may exist as between the original parties, it may be shown by parol evidence that the note never had any binding force for want of delivery or upon the condition which has failed, *Watkins* v. *Bowers*, 119 Mass. 383, that rule is not applicable to the facts in the case at bar, where the evidence was excluded for the reason that it was directly contradictory to the written contract, whose only provision for a return of the note was, "if agreement and declaration not executed." As the undisputed evidence shows that the agreement and declaration were executed, it is manifest that the judge rightly excluded the offer of proof. See *Faunce* v. *State Mutual Life Assurance Co.* 101 Mass. 279; *Cottage Street Methodist Episcopal Church* v. *Kendall*, 121 Mass. 528; *Martin* v. *Meles*, 179 Mass. 114; *Elastic Tip Co.* v. *Graham*, 185 Mass. 597, 600, 601; *Des Rivieres* v. *Sullivan*, 247 Mass. 443, 446.

As there was a valid consideration for the note, the answer directed as to the first issue was correct. The record shows that there were no equities existing, before the transfer of the note to the plaintiff, in favor of the defendant against

the payees. Accordingly, for the reasons previously stated, the answer directed as to the fourth issue must stand. No error of law appears in the conduct of the trial.

Let the entry be

*Exceptions overruled.*