## COAKLEY v. EQUITABLE BANK & TRUST CO.
### No. 2518.

Circuit Court of Appeals, First Circuit.

Feb. 11, 1931.

Thomas H. Mahony, of Boston, Mass., for appellant.

Robert G. Dodge, of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

This is an action to recover on three promissory notes given to the Tamiami Banking Company of Miami, Fla., and assigned to the appellee after maturity. The appellant was the maker of one note and an indorser on the other two.

The defendant, and appellant here, pleaded the general issue and in an amended answer set up the following as an equitable defense:

"And now comes the defendant and further answering avers that the notes referred to in the plaintiff's declaration were obtained by the fraud of the plaintiff's assignor the Tamiami Banking Company as hereinafter set forth and taken by the plaintiff subject to all equities.

"And the defendant says that one Anderson, the president of the said Tamiami Banking Company, and one Reese, the vice-president of the said Tamiami Banking Company, acting for and in behalf of the bank, induced the defendant and a group of men associated with him to purchase the bank of the said Tamiami Banking Company, on the representation that it was in a sound and solvent condition; that it had loans aggregating $770,000, each one of which was 100 percent good, and that the price made for the purchase, to wit, $125,000, was very much lower than a fair valuation for the bank; that the circumstances were such that an investigation and audit of the bank before purchase was impossible, but that if the defendant and his group would buy the bank on terms agreed on, and if any representation made should prove not to be true, that a cancellation of the purchase and a return of the money to the defendant and his group would be made on demand. In pursuance of said representations made by said Anderson and the said Reese in control of and acting on behalf of the said Tamiami Banking Company, an agreement was made by which the defendant and his group, in consideration of the sale of said bank, paid in cash $55,000; and, at the suggestion of Anderson and Reese, the defendant borrowed $20,000 additional from one Jacobs, through his attorney, Schwarzenberg, upon the promise of said Anderson, Reese and Tamiami Banking Company that said $20,000 so borrowed would be returned to the lender, by the bank, within a week from the date of borrowing, and the defendant says

that when the date for said repayment came, the bank procured the signatures of the defendant and of Gael Coakley and William M. Hurd for the purpose of making payment of said Jacobs' loan through the proceeds of the notes; that said signatures were obtained purely as an accommodation and on the express stipulation that no payment would ever be demanded, but that the notes would be returned after sale of stock which was retained had been made by the bank to persons who were not then available; that the moneys obtained from the discount of the notes in furtherance of the promise referred to were paid upon the same day by the defendant to Schwarzenberg and others who had helped in the procuring of the loan and that no benefit of any kind inured to the defendant, Gael Coakley or William M. Hurd or of any other persons in the group of purchasers; that the defendant was a mere conduit to repay the loan arranged for by the defendant in behalf of the plaintiff bank's assignor; that there was no consideration for the notes in question or for the defendant's making or indorsing thereof."

Whether or not the answer set up an equitable defense, the issues therein were tried out with the consent of the defendant before the District Judge sitting in equity, who made the following findings of fact:

"1. The Ta-Miami Banking Company did not own and had no interest in any of the shares purchased by the defendant and his associates. The shares were on the contrary the property of the individuals in whose names they stood.

"2. Payment for the shares in question was made, and was intended to be made, to the individuals in whose names the shares stood and not to the Ta-Miami Banking Company.

"3. The defendant signed the note for $5,000 (Ex. 1) and endorsed two notes for $10,000 each (Exs. 2 and 3). The proceeds were deposited to his credit with the Ta-Miami Banking Company, and were thereafter applied by him to his own purposes, the bank thus giving full consideration for the notes.

"4. The transaction with Schwarzenberg was entirely the defendant's own transaction and the Ta-Miami Banking Company had nothing to do with it and no responsibility concerning it.

"5. All of the shares purchased, other than the 135 shares retained as collateral by Anderson and Reese, were actually delivered to the purchasers and none were used in connection with the Schwarzenberg transaction.

"6. The Ta-Miami Banking Company did not agree that it would pay the Schwarzenberg loan or that the notes in suit should not be used or enforced."

The case was then submitted to the jury and the evidence taken out before the court admitted by agreement. At the close of the evidence the District Court directed a verdict for the plaintiff.

The appellant now contends that the notes were delivered to the Tamiami Banking Company conditionally, and that this question should have been submitted to the jury.

This question was really the only issue under the answer submitted to the judge sitting in equity. The amended answer sets forth that certain statements were made by Anderson and Reese as to the condition of the bank, but it does not state that they were false or fraudulently made. The answer further sets forth that in order to carry out the purchase of the stock the defendant borrowed $20,000 of one Jacobs, which the bank agreed to pay, to provide the defendant with funds to pay as soon as certain stock was sold by the bank; that the delivery of the notes in suit were merely an accommodation to enable this deal to be carried through; and that the bank agreed that the defendant should not be called on to pay them.

These issues were submitted to the judge sitting in equity who made the above findings. Whether properly submitted may be a question, but having consented thereto, the defendant waived his right to be again heard on them at law and is bound by the findings of the District Court. Am. Mills Co. v. Am. Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

The findings of the court left no issue for the jury except the making and indorsement of the notes about which there was no question of fact.

Even if the issues of fact raised in the answer had not been submitted to the judge sitting in equity, we think there was in the evidence no issue of fact for the jury. From the evidence introduced by the defendant, reasonable men could only come to one conclusion, viz.: That Mr. Coakley and Mr. Swig were dealing with Mr. Anderson and Mr. Reese personally for the purchase of the 266 shares of stock, of which Anderson owned 133 shares and Reese 133 shares; that what-

ever representations were made about the condition of the bank were representations by Anderson and Reese, acting in their own behalf and not for the bank; that the bank as a corporation had no interest in the sale of the stock of Anderson and Reese to Swig and Coakley, at least no beneficial interest; that any agreement made by Anderson, or Anderson and Reese, that they would sell enough of the stock purchased by Swig and Coakley, or of any other stock held by the bank to pay the note of Coakley to Jacobs, could not bind the bank without more authority than is shown here. Germania Safety-Vault & Trust Co. v. Boynton (C. C. A.) 71 F. 797. It is idle to suggest that the bank as a corporation was interested in the sale of the stock of Anderson and Reese to the extent that they as president and vice president, without express authority, could bind the bank to contribute $25,000 to enable them to dispose of their stock, from which sale the bank could derive no apparent benefit, and which, as a matter of fact, was followed by a withdrawal of a large amount of its deposits.

The actual facts were that the notes in question were given to the bank and the loan approved by a finance committee selected by the new management, not for an amount sufficient to pay the Jacobs loan of $20,000, with a bonus of $2,000, but for $25,000, and the proceeds, less the discount, credited to Mr. Coakley's personal account and checked out by him in payment of the Jacobs loan, and the balance for his own personal uses.

This was not the case of a conditional delivery of a note, as in Ware v. Allen, 128 U. S. 590, 9 S. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Watkins v. Bowers, 119 Mass. 383, or Mass. Biog. Soc. v. How, 234 Mass. 483, 125 N. E. 605, in which the validity of the note or its absolute delivery depended on facts to be determined later; but here value received was advanced on the note at the time of delivery upon an alleged agreement of an unauthorized third party that the maker should not be called on to repay it, and is governed by the principles laid down in Wagner v. Kohn (C. C. A.) 225 F. 718; Ryan v. Security Savings & Com. Bank, 50 App. D. C. 292, 271 F. 366; Payne v. Mutual Life Ins. Co. (C. C. A.) 141 F. 339, 345; Starks v. O'Hara, 266 Mass. 310, 165 N. E. 127; Liberty Trust Co. v. Price, 259 Mass. 596, 156 N. E. 749.

The judgment of the District Court is affirmed, with costs.