North American Uranium, Inc., a Corporation,

*Plaintiff and Respondent*

vs.

L. A. Johnston,

*Defendant and Appellant.*

(No. 2779; October 8th, 1957; 316 Pac. (2d) 325.)

334

For the defendant and appellant the cause was submitted upon the brief of R. G. Diefenderfer of Sheridan, Wyoming, and Maxwell Bentley of Moab, Utah, and oral argument by Mr. Diefenderfer.

For the plaintiff and respondent the cause was submitted upon the brief of Thomas Morgan of Gillette, Wyoming, and John Hjellum of Jamestown, North Dakota, and oral argument by Mr. Hjellum.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

336

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action to quiet title to certain mining

claims known as the Jake claims and described as follows:

"Lode mining claims known as the Jake Claims numbered 1 to 18 inclusive, as located, surveyed, filed and platted, in Sections 19 and 20 in Township 41, North of Range 73, West of the 6th P.M., Campbell County, Wyoming, more particularly located as follows: S½, and the South 360 feet of the S½N½ of Section 19; and the West 120 feet of the W½SW¼ and an oblong tract 360 feet north and south by 120 feet east and west in the southwest corner of the SW¼NW¼ of Section 20, Township 41, North of Range 73, West of the 6th P.M., Campbell County, Wyoming."

On July 6, 1955, the following document was made and executed by and between Peter Mileski, Jr., and Harold T. Mankin on the one hand and L. A. Johnston on the other, the document being signed on behalf of Johnston by F. A. Goodbrod, his partner or agent:

"KNOW ALL MEN BY THESE PRESENTS:

"That Pete Mileski, Jr., & Harold T. Mankin, first party, and L. A. Johnston, second party, do hereby agree as follows, (by F.A.G.)

"WITNESSETH:

"That the first party being the owner of the hereinafter specifically described lode mining claims, for and in consideration of Ten Dollars ($10.00) and other valuable consideration, does hereby sell, convey and assign to second party all of first party's right, title and interest thereto, except as hereinafter specifically provided, to the lode mining claims situated in Campbell County, Wyoming, and described as follows, to-wit:

"Jake No 1 to Jake 18, inclusive, claims. All claims lie in south half of Sec. 19 T-41 Range 73, with ex-

ception of two which lie in north east and north west of Section 19.

"Said party of second part, L. A. Johnston agrees to validate above claims. Said cost to be deducted from purchase price excepting and reserving however, to the first party, their heirs and assigns, a five per cent overriding royalty of the gross proceeds of all ores and materials mined and marketed from said premises including all bonus, incentive and premium payments but excluding haulage and development allowances that may be paid in connection with the marketing of ore or materials from said premises.

"That the second party shall keep said mining claims in good standing as to validation or assessment work and recording of required assessment work affidavits and for each assessment work period shall, on or before 60 days before date of requirement for completion of the same, furnish to the first party, or assigns, proof that such work has been done and in the event that second party, or assigns, desires to give up or abandon said mining claims second party shall at the option of the first party furnish a conveyance or reassignment of all rights to said claims at least 60 days prior to time for completing annual assessment work thereon.

"This agreement is binding upon the respective parties hereto and their respective heirs and assigns, and the right of assignment or transfer or conveyence by either party of their respective interests, either in whole or in part, is hereby permitted.

"That the overriding royalty hereinabove specified shall be paid to first party by depositing 50 percent, or an overriding royalty of 2½ percent, to the credit of Pete Mileski in the Stockmen's Bank at Gillette, Wyoming, and a like amount of a 2½ percent overriding royalty to the credit of Harold T. Mankin in the Stockmen's Bank at Gillette, Wyoming, such royalty to be paid to the credit of first party on or before the 20th day of the month following receipt of settlement by the second party for ores and materials marketed,

and for settlement for bonus, incentive and premium payments and at such times the first party shall be furnished copies of assay and settlement sheets and a full accounting for all ores and materials removed from said claims; that payment of such royalty may be paid by the purchasing or paying agents in the event that such direct payment is permissible or should be paid in such manner. That first party shall have the right to examine the workings and records pertaining to said claims and should be given full information by the second party of all knowledge obtained by second party pertaining to evaluation of said claims as to mineral content thereof.

"That the second party is hereby granted the right of ingress and egress in and over said described property for the purposes of prospecting for, developing, mining, producing, removing and marketing ores and materials from said premises as may be permissible under said lode mining claims and rights thereunder; and the said first parties do hereby grant to the second party a private easement for access road to said mining claims from the public county road for mining said claims and marketing materials and across U. S. Staley Archibald land on the trail not travelled or adjacent thereto. John Moore reserves his rights otherwise as surface owner of lands covered by said claims.

"This agreement is executed in duplicate this 6 day of July, 1955, and each party hereto acknowledges receipt of an executed copy hereof.

"/s/ Peter Mileski, Jr.

"/s/ Harold T. Mankin

"First Party

"/s/ L. A. Johnston

"Second Party     by F. A. Goodbrod"

For convenience we shall hereafter refer to this docu-

ment as a conveyance or instrument of conveyance. It was introduced in evidence by counsel for the plaintiff in the early part of the trial after cross-examination of the defendant under the statute.

On February 21, 1956, North American Uranium, Inc., a corporation, hereinafter referred to as plaintiff, bought the Jake claims and other claims from Mileski and Mankin. Thereafter, and on March 28, 1956, plaintiff filed its amended petition setting forth facts as in an ordinary action to quiet title, and further asked an injunction to prevent Johnston from removing any minerals from the Jake claims. A temporary injunction was issued. Johnston, the defendant, filed an answer and cross-petition. He alleged that he became the owner of the mining claims in question on July 6, 1955, and he asked that the title thereto be quieted in him. A reply was filed by plaintiff denying the affirmative allegations of the defendant, and again alleging that the plaintiff is the owner of the mining claims. The trial court entered judgment denying the defendant any right under his answer and cross-petition, quieting title to the claims in the plaintiff and absolving it from any liability under the bond given in connection with the issuance of injunction. From this judgment the defendant has appealed, assigning as error the admission of parol testimony to contradict and vary the terms of his written conveyance, and that the judgment of the trial court is contrary to the evidence and contrary to law. The controlling questions are those hereinafter discussed.

1. Unacknowledged Instrument and Notice Thereof.

Before proceeding further, we may incidentally mention that counsel for plaintiff seem to have been

under the impression, and perhaps still are, that the conveyance to Johnston was invalid because it was not signed by Johnston personally, or by an agent who had a power of attorney duly acknowledged. They mention § 66-127, W.C.S. 1945, which relates to the power of attorney which an agent must have in order to convey land. Of course it is elementary that an agent may be appointed to transact any lawful business for and on behalf of the principal. 1 Mechem on Agency, 2d Ed., § 80. For the agent to convey any interest in real property and have the conveyance recorded, he must have a power of attorney duly acknowledged. In this case, the agent did not undertake to convey any interest in land. He merely accepted a conveyance on behalf of his principal, and he had a right to do that under the general rules of agency.

In the case at bar the instrument of conveyance to Johnston was not acknowledged, and hence was not entitled to be placed of record under the laws of this State. Still it was perfectly good as between the parties. 1 C.J.S. § 17, p. 796; 76 C.J.S. § 32, p. 130. The question then is whether or not it is good as to the plaintiff, a subsequent purchaser The general rule is stated in 1 C.J.S. § 17, p. 797, that an unacknowledged instrument is ordinarily effective "except as to subsequent purchasers or creditors without actual notice." Section 66-119, W.C.S. 1945, states as follows:

"Every conveyance of real estate within this state, hereafter made, which shall not be recorded, as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

We construed that statute in the case of York v.

James, 60 Wyo. 222, 148 P.2d 596, 598. We there held that the burden of proof is on the subsequent purchaser to show that he purchased the property in question in good faith and without notice. In that case we approved the rule laid down in Bell v. Pleasant, 145 Cal. 410, 78 P. 957, 959, 104 Am.St.Rep. 61, where that court stated as follows:

" 'A subsequent deed by the grantor to another person does not of its own force convey any title, for the grantor, having previously parted with his title, has left in himself nothing to convey, and his deed alone can therefore convey nothing. It can only be effective, as against the first grantee, when supplemented by proof that it was first recorded, and that the grantee therein named purchased for value, and without notice of the prior deed, or of the rights of the first grantee. This, also, is an attempt to change a legal condition. The necessary facts cannot be presumed in favor of the second grantee, and hence the burden is on him to make the supplementary proof.' "

It is accordingly necessary to examine the evidence in order to determine whether or not the plaintiff has sustained the burden of proof mentioned above. And in that connection it is stated in 66 C.J.S. § 11, p. 644, that "where a party having knowledge of facts sufficient to put him on inquiry neglects to make that inquiry, and thereby suffers loss, such loss must be attributed to his own negligence, and he will not be relieved in a court of equity."

The witness Earl Dunlap, an attorney, drafted the instrument of conveyance to Johnston, and had a copy of it in his office. About February 7, 1956, Mileski and one Hatley came to his office, and wanted a copy. Dunlap phoned Johnston, and the latter told him to go ahead and give them one, which was done, but Mileski at the same time took Dunlap's office copy, which, to

judge from the record, Dunlap felt was purloined by Mileski. On or about February 21, 1956, Mr. Archer, president of North American Uranium, Inc., and Mr. Hjellum, its attorney, came to Dunlap's office to have him help them draft a contract with Mileski and Mankin relating partially to the Jake claims. Dunlap testified that he informed them of the document which Johnston had and that Mileski had taken his copy and that there would probably be a controversy as to the Jake claims, since Johnston claimed them as his own.

This testimony is confirmed by a letter written by Dunlap to plaintiff, which was introduced in evidence by the plaintiff, and in which Dunlap stated in part: "I informed you that there would probably be a controversy on this as Mr. Johnston claimed ownership of these claims." Dunlap further testified that he suggested to Archer and Hjellum, that, in order to protect them by reason of Johnston's claims, the contract of plaintiff with Mileski and Mankin be modified so that plaintiff would get its money back if title should fail, and that this was done. The record shows that such modification was made.

The testimony of Dunlap was not denied. On the contrary Mr. Archer and Mr. Hjellum both substantially confirmed it by their testimony. They both testified that they made no inquiry of Johnston regarding the conveyance, although Johnston was at that time present in Gillette where their transaction took place, but that on the contrary they relied wholly on what Mileski and Mankin told them and on the fact that the conveyance to Johnston was not on record. It is, we think, quite clear from what has been said that they had knowledge that Johnston claimed an interest in the Jake claims and that such interest was in writing. They apparently deliberately refused to make inquiry of

Johnston as to what his interest was, and contented themselves by relying on Mileski and Mankin, when they knew or should have known that Mileski and Mankin were interested parties who would not be likely to disclose any facts prejudicial to them. Plaintiff has wholly failed to sustain the burden of proof that it bought the Jake claims without notice of Johnston's conveyance.

## II. The Parol Evidence Rule.

On behalf of the defendant Johnston, the testimony shows that he bought the Jake claims in question and obtained absolute title, subject only to the terms and conditions specified in the conveyance, for the consideration of $5,400; that he spent about $9,000 on these claims, which we presume was included in the payments made pursuant to the conveyance; that uranium claims in July 1955 were worth from $250 to $300 a claim on the market; that he spent $475 on validating the claims; that the claims, so far as developed prior to and soon after February 1956, did not yield much income over and above the cost of the freight charges on the material which was sent to purchasers and assayists; that he paid $1,500 on the purchase price on August 6, 1955, and additional $1,000 a little later; and that on October 26, 1955, he offered the remainder of the purchase price of $2,200, which was refused by the grantors in the conveyance, but which was endorsed by Mileski.

Mileski and Mankin both testified that the consideration was to be $2,000 a claim, or a total of $36,000; that the consideration of $5,400 was for an option for the property; that the balance of the amount, namely, $1,700 a claim was to be paid in ninety days.

Mileski testified:

"* * * the $300.00-a-claim was to be the down payment of an option for 90 days and the balance to be paid within 90 days." (684)

"Q. Was it your understanding with Mr. Goodbrod that that (the matter of option) would be put on after discussing it with Mr. Johnston? A. Yes, it was." (695)

The above question was objected to as obnoxious to the parol evidence rule. The objection was overruled. The witness Mileski admitted that he endorsed the $2,200 check testified to by Johnston, but stated that it was not offered to him.

Mankin testified:

"* * * my understanding was that it was just an option and it was just something concrete for Mr. Johnston to be be able to promote a sale on this property." (938)

"* * * And I told him (Goodbrod) also that to fill it in there all about the option—90-day option—and that the money was to be paid, $5,400.00, immediately." (949)

"Q. And what instructions did you give him (Goodbrod) with reference to this option portion and the consideration? A. I told him to write in there about the 90-day option, $5,400.00 to be paid immediately." (952)

"Q. What did you think you had signed? A. I thought I had signed an option. That was all that Mr. Johnston and I and Pete had ever talked about, was an option." (973) Objection to this was overruled.

"Q. Was there any payment to be made thereafter? Yes." (953)

"Q. How much?  A. $1,700.00 per claim before the 90-day period was up." (954)

"Q. What would that make the total per claim if they exercised the option?  A. $2,000.00 per claim." (955)

"Q. What payment did you actually receive under this Plaintiff's Exhibit No. 3?  A. I received one check for $1,500.00." (956)

Mileski testified that he did not read the document, exhibit 3. Mankin stated that he read it, but did not quite understand it.  The record shows that both men are men of comparative intelligence.

We have before us then a conveyance of mining claims which is absolute on its face, and which does not disclose any ambiguity.  On the other hand we have before us the testimony of Mileski and Mankin that the conveyance was to be merely an option for a period of ninety days. The question then is whether that can be shown by parol evidence.  Multitudinous cases have been decided involving that rule, and so varying are the results in cases that it is stated by a learned author (3 Corbin on Contracts, p. 329) that the rule is so variable in its operation as to be the despair of law teachers and law writers. Counsel for plaintiff say that objections to the parol testimony were not made promptly and motions to strike were lacking in some instances.  It seems to be true that counsel for Johnston were not always sufficiently alert in making objections or motions to strike.  Still the objection that parol testimony was not admissible was sufficiently called to the court's attention, and the absence of alertness may have been and probably was partially due to the state of the pleadings.  Moreover the parol evidence rule is one of substantive law.  Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 51 A.L.R. 13; 9 Wigmore on Evidence, 3d Ed., § 2400.  Hence the fact that

testimony was admitted without objection was immaterial. The rule must be applied in spite of that. Martin v. Jablonski, 253 Mass. 451, 149 N.E. 156; 20 Am.Jur. § 1101, pp. 963, 964.

Plaintiff further argues that it may be shown, notwithstanding the parol evidence rule, that an agreement was entered into through fraud or mistake. That is true, Bushnell v. Elkins, supra. But that was not made an issue in this case, and we cannot say that the parties voluntarily enlarged the issue. In fact the contrary appears. Fraud and mistake must not alone be proven, but must also be pleaded if the parol evidence rule is not to apply. 32 C.J.S. §§ 978, 979, pp. 941-951; Castleman Blackmore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S.W. 749; Overby v. Beach, 220 La. 77, 55 So.2d 873; Arkansas Fuel Oil Co. v. Underwood, Tex. Civ.App., 193 S.W.2d 276; Nourse v. Kovacevich, 42 Cal.App.2d 769, 109 P.2d 999. Hence we cannot consider that argument, and we see no necessity to investigate or determine the law relating to fraud and mistake in this connection in the case before us.

Ever since the time that Wigmore wrote his monumental work on evidence, courts and textbooks have spoken of integration of a transaction, or jural act, as Wigmore terms it. The author defines the term as the process of embodying the terms of a jural act in a single memorial. 9 Wigmore on Evidence, 3d Ed., p. 76. See also the definition in 1 Restatement, Contracts, § 228. Speaking of such a memorial, 9 Wigmore on Evidence, 3d Ed., p. 44, states as follows:

"Where a jural act is executed by signing a specific and complete document, the second party has a right to treat the signed contents as representing the terms of the act. The principle of reasonable consequences plainly requires this result. That the signer did not in-

tend to execute such terms is immaterial; and whether the lack of intent was due to a failure to read it over, or to some other cause, is immaterial."

A transaction may be integrated only partially. In such a case parol evidence to prove that part not reduced to writing is admissible, although it is not admissible as to the part reduced to writing. 20 Am.Jur. § 1135, p. 988; 9 Wigmore on Evidence, 3d Ed., p. 97. In the case at bar, Mileski and Mankin disputed that the description of the premises involved in the conveyance was inserted prior to the signing thereof. However, that is immaterial since the parties are agreed that the description inserted was the description mutually intended by the parties. The transaction was not wholly integrated so far as the consideration was concerned, since the conveyance stated it was for ten dollars and other valuable consideration. So testimony on that point was admissible. But the conveyance does not contain a forfeiture clause. Forfeitures are not favored. 17 C.J.S. § 407, pp. 894, 896, 897. "A forfeiture cannot be had on grounds other than those specified in the contract. * * * The least favored of all forfeitures are those founded on mere delay in the payment of money." Hence, as a matter of course, Mileski and Mankin could not declare the conveyance to be invalid by their unilateral act, unless perchance Johnston had in fact only an option. The contention that Johnston consented to the forfeiture or abrogation of the conveyance will be considered later. So we arrive at the point of determining whether or not such option could be shown by parol evidence in the face of the conveyance to Johnston, which is clear and unambiguous and fully integrated in all respects except as heretofore mentioned.

In order that a contract or conveyance may be valid, there, of course, must be a delivery by the party to be

bound. In the case at bar, according to the evidence, Mileski and Mankin duly signed the conveyance to Johnston, and delivered it to Goodbrod as Johnston's partner or agent and was duly accepted by Johnston himself. Further, the delivery to Johnston was confirmed by the acceptance of payment pursuant to the conveyance of at least $1,500. Payment by Johnston was made to and accepted by Mankin. However, payment to one joint maker of the conveyance was payment to both. 70 C.J.S. § 4, p. 214. Hence there can scarcely be any doubt so far as delivery of the conveyance to Johnston is concerned. What particular right the conveyance conveyed is, of course, another matter, and the question before us is whether parol evidence can show the right mentioned in the conveyance to Johnston to be different from what is stated therein in clear and unambiguous language.

Counsel for plaintiff argue that it may be shown there was no contract or agreement. But that point is not involved herein, since there was an agreement, and the only question is what the agreement was. The testimony that Mileski and Mankin thought they were signing only an option or that the agreement actually was for only an option is merely evidence varying and contradicting the unambiguous writing in the conveyance to Johnston. That cannot be done by parol testimony. 32 C.J.S. § 851, p. 784 and subsequent pages. See Annotation, 70 A.L.R. 752, especially p. 770; 3 Williston on Contracts, Rev. Ed., § 630; 9 Wigmore on Evidence, 3d Ed., p. 244. Counsel for plaintiff, however, argue that it may be shown by parol evidence that the agreement of the parties is subject to a condition precedent. The only testimony which could, perhaps, be construed as a condition precedent—and it is that at most—is the testimony that Goodbrod was instructed to insert in the conveyance to Johnston that

it was merely an option and given for the purpose of having something concrete to be able to promote the sale of the property. It is frequently stated that parol testimony may be admitted to show a condition precedent which relates to the delivery or the taking effect of the instrument in writing. 32 C.J.S. § 935, p. 857; Whitcher v. Waddell, 42 Wyo. 274, 292 P. 1091. But the rule has its limitations, although the authorities do not seem quite uniform. See Main v. Oliver, 88 Ark. 383, 114 S.W. 917, 129 Am.St.Rep. 110. In 3 Williston on Contracts, Rev.Ed., p. 1826, it is stated: "But evidence of an oral condition that is repugnant to the condition stated in the writing, or is offered in substitution for it, is inadmissible." In 32 C.J.S. § 935, p. 859, it is stated: "Where the alleged condition precedent is inconsistent with the written instrument parol evidence thereof is inadmissible." In Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, 516, the court stated:

"Therefore, the rule is that parol evidence cannot be received to establish any oral condition relating to the contract if the condition is inconsistent with the terms of the written instrument. 32 C.J.S., Evidence, § 935, p. 859. In other words, 'An oral condition that is repugnant to the condition stated in the writing, or is offered in substitution for it, is inadmissible.' Williston on Contracts, Rev.Ed., Vol. 3, Sec. 634, p. 1825. Stated conversely, 'The oral agreement is operative if there is nothing in the writing inconsistent therewith.' Restatement of the Law of Contracts, Vol. 1, Sec. 241, p. 340. 'In general, extrinsic evidence cannot be introduced to contradict or vary the intention of the parties as set out in the written contract by showing the existence of a prior or contemporary oral understanding contrary to the terms of the written contract.' Elliott on Contracts, Vol. 2, Sec. 1621, p. 929. Then, in discussing the exceptions to this rule, the same authority says, in Sec. 1633, p. 946, 'The question usually is as to whether the parol evidence sought to be introduced contradicts or alters the written contract, or leaves it

to stand unchanged and simply tends to establish an additional collateral agreement.' "

In Crotzer v. Shawl, 5 Tenn.App. 240, 244, it is stated:

"The test is whether or not the parol testimony tends to show a collateral agreement, independent fact, condition precedent, or other agreement which is not inconsistent with, or does not qualify any of the terms of the written contract."

. To the same effect is Nelson Equipment Co. v. Goodman, 42 Wash.2d 284, 254 P.2d 727, and authorities cited. Graham v. Savage, 110 Minn. 510, 126 N.W. 394, 136 Am.St.Rep. 527, 19 Anna. Cas. 1022; Gibson County v. Fourth & First Nat.Bank, 20 Tenn.App. 168, 96 S.W.2d 184; Barnes v. Verry, 174 Minn. 173, 218 N.W. 551; Shornick v. Schornick, 25 Ariz. 563, 220 P. 397, 31 A.L.R. 159; State v. Interstate Surety Co., 48 S.D. 341, 304 N.W. 650; Barnsley v. Shaffer, 358 Pa. 415, 57 A.2d 870; Rath v. Schoon, 192 Iowa 180, 182 N.W. 180; Meyer v. Armstrong, 49 Wash.2d 598, 304 P.2d 710; 1 Restatement, Contracts, § 241.

In Frischkorn Real Estate Co. v. Hoskins, 226 Mich. 30, 196 N.W. 888, 889, the court stated:

"* * * the rule is well established, that, to permit evidence of a preliminary or contemporaneous oral agreement, it must appear that it is consistent with the terms of the writing, not negatived by the writing itself, that it does not tend to vary or contradict the written instrument, and that its terms are independent of those which the writing purports to express. 22 C.J. 1245; 10 R.C.L. 1035. If the writing deals with the particular element of the negotiation sought to be proven, evidence thereof is not admissible."

. In L. B. Williams Organization v. Winter, 106 Cal. App.2d 604, 235 P.2d 407, 408, an attempt was made

to show by parol that, as in the case at bar, the written contract was to become effective only after a material change had been made in the contract. The court holding that this could not be done stated in part as follows:

"The trial court admitted the testimony of the seller on the theory that it tended to prove a conditional delivery by him of the contract. In so ruling, the trial court inadvertently failed to differentiate between a fully executed contract which was to take effect by its own terms upon the fulfillment of an entirely extraneous condition to any of its terms and one where the condition named was of a character contrary to the terms expressed in the contract. While the rule is well established that parol evidence is admissible to show that a contract fully executed and delivered is not to be effective, unless and until, some condition, extraneous to the terms of the contract, has been complied with, such, for instance, as where it is not to be effective unless additional persons sign it or some future specified event transpires, the rule is equally well established that the parol condition may not be shown if it is contrary to the terms of the written executed contract. Severance v. Knight-Counihan Co., 29 Cal.2d 561, 177 P.2d 4; Travers-Newton Chautauqua System v. Naab, 196 Iowa 1313, 196 N.W. 36, 32 A.L.R. 780; United Engineering & Contracting Co. v. Broadnax, 2 Cir., 136 F. 351; Liberty Trust Co. v. Price, 259 Mass. 596, 156 N.E. 749; Rest., Contracts, sec. 241, 3 Williston on Contracts, Rev.Ed., sec. 634, notes 9 and 11. In the case before us the parol evidence was offered merely to show that the contract was not to be effective unless a material change in one of its terms was agreed to by the buyer. This could not be shown in the absence of fraud which the court specifically found had not been shown."

In the case at bar the conveyance to Johnston was absolute, conveying to Johnston an absolute title, subject only to the terms and conditions specified in the conveyance. These terms or conditions do not in any

way subtract from the absolute title. They are merely agreements to be performed by Johnston. It is quite clear that an option for ninety days is wholly inconsistent with an absolute title and contradicts the terms of the writing. Parol evidence was not admissible to prove such option. See Meyer v. Armstrong, 49 Wash. 2d 598, 304 P.2d 710. The court erred in receiving it, and basing its judgment in whole or in part, as it seems to have done, upon such parol testimony. We might say in that connection that the Jake claims were not validated when the conveyance was made to Johnston. Their value was not known, the first samples of supposed uranium showed them to be substantially valueless. We are wondering whether an ordinary man would expend $9,000 and agree to pay $5,400 for a ninety-day option for such claims. We do not know, of course, what speculators in gold or uranium may do. Further, testimony as to the market value of claims on July 6, 1955, might throw considerable light on the subject. We are not now prejudging the matter. We might further say incidentally that if the conveyance herein to Johnston was in truth absolute, as it appears on its face, but the purchase price was more than $5,400 as claimed by Mileski and Mankin, the latter could, of course, recover whatever amount of the purchase price that has not yet been paid. But that is a matter not before us in this action.

III. Abrogation or Rescission of Conveyance.

From what we have said it is clear that judgment for plaintiff was not authorized under any theory heretofore discussed. But it is claimed by plaintiff that the conveyance was canceled, rescinded, abrogated, or abandoned by the parties and that the judgment was authorized on that theory under the testimony.

The judgment of the trial court does not indicate

upon what theory it was rendered. It is unfortunate that no request for findings of fact and conclusion of law were asked. If such request had been made, it might have saved this court a good deal of trouble. It may be that the trial court did not render its judgment upon the theory here advanced by counsel for the plaintiff, and so discussion may be entirely superfluous. But in view of the record, and the contention of counsel for plaintiff, it would seem to be necessary for us to discuss the matter. We might incidentally mention in this connection, which also applies to the previous point here considered, that plaintiff itself introduced the conveyance to Johnston in evidence. It would seem, accordingly, that plaintiff vouched for it as to its binding effect, insofar as it on its face permitted it to be binding, and it seems somewhat strange that plaintiff should in this action be permitted to attack it and claim that it was no longer in existence, that is to say, canceled abrogated, rescinded, waived, or abandoned. See 32 C.J.S. § 1040, p. 1104. We shall not, however, base this decision on that theory.

There is testimony in the record by Mileski that, in October 1955, he told Johnston the transaction with the latter was terminated, and that Johnston admitted, which was denied by the latter, that it was no longer legally effective. Mankin testified, the time not appearing, that he told Johnston he was through and that Johnston did not object. A memorandum was introduced, exhibit 5, dated November 12, 1955, which related to 49 claims and the *interest* of Mileski in the Jake claims. What interest in the Jake claims was intended is equivocal and does not appear from the memorandum. It might have been the unpaid amount due Mileski on the agreement or conveyance of July 6, 1955, or the whole interest of Mileski prior to July 6,

1955. On its face and standing alone, it does not refer to any of Mankin's interest.

Counsel for plaintiff claim that under this evidence it should be held the agreement or conveyance of July 6, 1955, was at an end. There seems to be some inconsistency in the testimony of Mileski and Mankin. On the one hand they claim that Johnston had nothing but an option for ninety days. If that is true, it expired at least by October 6, 1955. No agreement for abrogation, rescission, and so forth, of the conveyance was then necessary, so that the testimony as to abrogation and so forth would seem to admit there was in fact more than an option for the period mentioned.

Counsel for defendant Johnston contend that the parol evidence rule applies to the contention made here, so that it would make no difference whether objection to the testimony was made or not. They have assigned the admission of exhibit 5 as error. The authorities distinguish situations. It is stated in 32 C.J.S. § 964, p. 930, as follows:

"Further, parol evidence is admissible to show that the written agreement between the parties has been repudiated, rescinded, abrogated, or abandoned in whole or in part, at least where the written agreement does not involve matters required to be in writing. However, parol evidence of a rescission or cancellation of a written agreement may be rejected where the written agreement is one required to be in writing."

See also 32 C.J.S. § 1005, p. 1011:

"The general rule is that evidence of a subsequent parol agreement is inadmissible to prove a modification of a written contract which is required to be in writing. The general rule is usually inapplicable, however, where the subsequent agreement has been executed, or where acts amounting to an estoppel are shown."

If our statute of frauds has any application, it would seem to be § 5-101, W.C.S. 1945, subdivision 5, which states that "Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year" must be in writing. Is the relinquishment of an interest in the uranium claim, or the cancellation or rescission of a conveyance thereof, an agreement or contract for the sale of real estate? The arguments of counsel are entirely silent on that point. We think it best not to decide it without full argument thereon.

However, while the theory of counsel for defendant as to inadmissibility of the foregoing testimony may be wrong, still it would seem that if it was inadmissible in this action on any theory, defendant should not be bound thereby.

The right to have an instrument canceled, rescinded, or abrogated may at times give rise to an original cause of action, that is to say, the right to file a petition or complaint. In such case no intelligent petitioner or complainant would do otherwise than to plead the facts, adding a prayer that the instrument be canceled, rescinded, or abrogated, so that the judgment may be supported by pleadings as it should be, for as stated in 49 C.J.S. § 40, p. 95:

"* * * as a general rule pleadings are essential to support the judgment of a court of record, and are as necessary a basis for a valid judgment as is evidence."

There is, of course, no reason why the rule should not be the same when the right of cancellation, rescission, abrogation, waiver, or abandonment is claimed by plaintiff as a defense to a written conveyance as in the case at bar. If the judgment herein is based on such defense, then it should be supported by proper

pleadings.  It is stated in 17 C.J.S. § 551, pp. 1187, 1188, as follows:

"Since at any time before a breach * * * the parties to a written contract may dissolve, waive, discharge, or qualify the contract, or any part thereof, by a new contract, such a new contract may be set up in defense, provided it is specially pleaded.  A modification or a rescission of the contract must be specially pleaded if relied on as a defense; and the same is true of a discharge of the contract by agreement.  So, also, where defendant relies on a waiver of a stipulation in the contract sued on, he must plead it."

If abandonment is claimed the rule is the same.  I.C. J.S. Abandonment § 6, p. 14.  The rule should of course apply to the conveyance to Johnston, and we shall assume, without deciding, that upon compliance with the rule an absolute conveyance of an interest in real property may be shown by parol evidence to have been abrogated or rescinded.  See Anderson v. Anderson, 128 Wash. 504, 223 P. 323, 38 A.L.R. 292 and annotation.

In the case at bar there is a total lack of pleading in this connection.  What is the effect thereof under the evidence in this case?  Most of the evidence in this case relating to the abrogation or rescission of the transaction between Johnston and Mileski and Mankin, was admitted without any objection or the proper objection.  When exhibit 5 was introduced, Mr. Bentley, counsel for defendant, stated:

"Your Honor, we will object to it on the grounds that it's indefinite, it's uncertain and, also, it, of course, is not acknowledged. Now, I don't know if counsel means, by introducing this unacknowledged instrument, to alter or show the terms of the previously acknowledged instrument, or not."

Whatever counsel meant, it was not an objection

that the instrument was immaterial and irrelevant because it was not within the issues of the case. This court has held a number of times that when testimony is introduced without objection, but not strictly within the issues of the case, the pleading may be considered as amended. See for instance Urbach v. Urbach, 52 Wyo. 207, 73 P.2d 953, 113 A.L.R. 889. An elaborate opinion on the subject is contained in Claughton v. Johnston, on rehearing, 47 Wyo. 536, 41 P.2d 527, where the test is stated to be as to whether or not prejudice results from lack of allegations. We have, however, never held that amendments may be deemed to be made when there is a total lack of pleading on the subject in question, for if there is such total lack, there is nothing to amend or can be deemed to be amended. On the contrary, we said in Claughton v. Johnston, 47 Wyo. 447, 536, 545, 41 P.2d 527, 530: "Of course, even under the rule of these cases, a pleader must, doubtless, inform the opponent of his claim in some reasonable way, as otherwise it could probably seldom, if ever, be said that no prejudice resulted." That, we think, applies in this case, otherwise the rule above stated that a judgment must be sustained by pleadings would be entirely ignored. While the rules of pleading have become more liberal than they were in the past, still it would seem that a party is entitled to a fair warning of what the vital contentions of the opponent are, so as to be able to meet them if possible. We might incidentally mention the fact that it is held in Southern States Co. v. Long, 15 Ala.App. 286, 73 So. 148, that a waiver of an existing right must be supported by sufficient consideration. A number of cases are cited. On the other hand it is held in Rodgers v. Rodgers, 235 N.Y. 408, 139 N.E. 557, citing authorities, that a contract to cancel and rescind a former agreement needs no further consideration other than the mutual con-

sent of the parties. We do not think that we need to decide the point.

The judgment herein accordingly cannot be sustained on the theory here discussed. It follows from what we have said that the judgment of the trial court must be, and is, reversed. The case is remanded to the trial court of Campbell County, Wyoming, for further proceedings not inconsistent with this opinion.

Reversed and remanded.