2002 WY 33

**Daniel L. JESSEN, Appellant (Plaintiff),**

v.

**Dennis L. JESSEN and Raymond Jessen, jointly and severally, Appellees (Defendants).**

No. 00–204.

Supreme Court of Wyoming.

Feb. 26, 2002.

Rehearing Denied April 9, 2002.

---

Alexander K. Davison and Wendy Curtis of Patton & Davison, Cheyenne, WY. Argument by Ms. Curtis, Representing Appellant.

Larry B. Kehl of Buchhammer and Kehl, P.C., Cheyenne, WY. Argument by Mr. Kehl, Representing Appellees.

Before LEHMAN, C.J., and GOLDEN, HILL and KITE, JJ, and SPANGLER, D.J. Ret.

LEHMAN, Chief Justice.

[¶ 1]  Appellant Daniel L. Jessen (son) appeals from the trial court's order, which quieted title in or, in the alternative, granted an

equitable lien in favor of appellee Raymond Jessen (uncle).

[¶ 2] We reverse in part and affirm in part.

## ISSUES

[¶ 3] The son presents the following issues for our analysis:

1. When a conveyance of real property is adjudicated as fraudulent and is set aside to satisfy the Grantor's obligation to a creditor, under what circumstances, if any, is the Grantor of the fraudulent conveyance entitled to reclaim the property from the Grantee, if the debt to the creditor is later satisfied?

2. Was Daniel Jessen's previous interest of record extinguished when redemption occurred?

3. Did the trial court err in granting to Raymond Jessen an equitable lien as alternative relief in the event this court finds Daniel Jessen's interest in the property is superior to that of Raymond Jessen?

## FACTS

[¶ 4] In 1984, Dennis Jessen (father) conveyed certain real property to his son by way of a quitclaim deed. The son was three years old at the time of this conveyance. The quitclaim deed was recorded in October of 1984. Since that time, the father has continued to farm and manage the property. He has also resided on the property rent-free and has used earnings made from the property operations to pay his own personal expenses.

[¶ 5] The father failed to pay income taxes on the property for the years 1984, 1986, 1988 and 1990, resulting in a tax liability of $139,248.31. In 1992, the property was placed in the hands of a public conservator who managed the property for the son, a minor at the time. The Internal Revenue Service (IRS) issued a Notice of Levy and Notice of Seizure on the property. The public conservator filed a complaint and request for a temporary restraining order and asked the court to declare the liens and levies wrongful. The IRS counterclaimed, alleging that the father had fraudulently transferred the property to the son. The Federal District Court found the transfer to be fraudulent and set it aside. The IRS seized and sold the property at a foreclosure sale. Shortly before the expiration of the redemption period, the father approached his uncle for assistance in redeeming the property. The uncle loaned him $80,960.00 to redeem the property in exchange for a quitclaim deed, which granted the father the option to buy back the property. This deed was recorded in February of 1999.

[¶ 6] A dispute between the son and the father arose in 1999 over ownership of the property. The uncle was subsequently joined. Prior to trial, the father and son reached a settlement, and the father was dismissed from the case. The issues between the son and the uncle were not settled, and the case went to trial. The trial court quieted title in the uncle and also imposed an equitable lien on the property in favor of the uncle as alternative relief in the event this court held the son's rights to the property to be superior to the uncle's. The son appeals from this decision.

## STANDARD OF REVIEW

[¶ 7] This case was tried before the trial court, which made findings of fact and conclusions of law.

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Hammond v. Hammond,* 14 P.3d 199, 203 (Wyo.2000) (quoting *Fremont Homes, Inc., v. Elmer,* 974 P.2d 952, 958 (Wyo.1999) (citations omitted)). This court reviews the trial

court's conclusions of law *de novo.* *Hammond,* 14 P.3d at 201. This court can affirm the judgment on any legal ground appearing in the record. *City of Laramie v. Hysong,* 808 P.2d 199, 202 (Wyo.1991).

## DISCUSSION

[¶ 8] The son insists that when the conveyance of the property to him was declared fraudulent, the conveyance was set aside only to the extent necessary to satisfy defrauded creditors and not as between the parties. He also claims that the redemption of the property merely returned the property to its presale status, meaning title returned to him. The son finally contends that the trial court erred by granting the uncle an equitable lien as alternative relief in the event this court found the son's interest in the property to be superior to the uncle's.

[¶ 9] Although the son and his father have settled the issues with regard to the property between themselves, the son requests this court to determine who has superior rights in an attempt to show that because his father did not have any rights to the property, he did not have any rights to quitclaim to the uncle in exchange for the redemption money.

[¶ 10] In order to analyze these issues, this court must begin by deciding what effect the federal court's finding that the conveyance from the father to the son was fraudulent had on each parties' ownership rights. Courts have generally held that a fraudulent conveyance is valid as between the parties and that the conveyance is voidable only at the option of creditors or others within the protection of the statutes to the extent that is necessary to satisfy any debts. 37 Am.Jur.2d *Fraudulent Conveyances and Transfers* § 89 (2001). Therefore, a conveyance that is fraudulent as to creditors, remains valid as between the parties to the transaction. 37 Am.Jur.2d *Fraudulent Conveyances and Transfers* § 95. "[T]he transferee becomes vested with such ownership and title as the transferor possessed and purported to convey." *Id.* The rationale behind this position is that a fraudulent transferor should not be allowed to benefit from his own misdeed. *See Smith, Keller & Asso-* *ciates v. Dorr & Associates,* 875 P.2d 1258, 1269 (Wyo.1994) (where this court said that the purpose of the Uniform Fraudulent Conveyance Act is to prevent insolvent debtors from placing property outside the reach of creditors while still enjoying the benefits of the property). *See also Wantulok v. Wantulok,* 67 Wyo. 22, 214 P.2d 477, 480 (1950) (where this court recited the general rule that "courts will not aid a fraudulent grantor to recover from his transferee, property transferred in fraud of creditors").

[¶ 11] Given these legal principles, we conclude that the conveyance between the father and son was merely voidable at the option of the father's creditors, here the IRS, rather than completely void as between father and son. We also point out, however, that the IRS did void the transaction at least as far as it was concerned when it foreclosed on the property to satisfy the father's debt.

[¶ 12] Although neither party contested the father's right to redeem the property, we considered this issue given our conclusion that the conveyance remained valid as between the father and the son. The right to redeem is purely statutory; therefore, redemption may only occur in strict compliance with the statutes that govern it. 55 Am. Jur.2d *Mortgages* § 895 (1996). Wyo. Stat. Ann. § 1–18–103 (LexisNexis 2001) describes who may redeem a piece of property as, "any person, his heirs, executors, administrators, assigns or guarantors whose real property has been sold by virtue of an execution, decree of foreclosure, or foreclosure by advertisement and sale[.]" Because the transfer had been voided as far as the IRS was concerned, in this limited circumstance, the father did possess the right to redeem the property from the foreclosure sale purchaser under this statute.

[¶ 13] We turn our attention next to what effect the redemption had on the father and son's property rights. A redemption voids the foreclosure sale and returns the property to its presale status except for the obligation that has been paid. Wyo. Stat. Ann. § 1–18–103(a); *First Southwestern Fin. Servs. v. Laird,* 882 P.2d 1211, 1216 (Wyo. 1994). So in this case, ownership in the

property after the redemption reverted to the son. The father, therefore, did not retain any rights to deed to the uncle. The trial court's conclusion that title to the property was vested in the uncle is accordingly reversed.

[¶ 14] Because the father did not possess any rights in the property to deed to his uncle, we must decide whether the uncle is entitled to an equitable lien. As we analyze this issue, we remain mindful of the fact that at the time the uncle loaned the father the money to redeem the property, the father and the uncle believed that the conveyance to the son had been declared void by the federal court and that the property would revert to the father once it had been redeemed.

[¶ 15] An equitable lien is generally defined as

a right, not recognized at law, which a court of equity recognizes and enforces as distinct from strictly legal rights, to have a fund or specific property, or the proceeds, applied in full or in part to the payment of a particular debt or demand.

*Rolfe v. Varley*, 860 P.2d 1152, 1157 (Wyo. 1993) (quoting 53 C.J.S. *Liens* § 2 at 457 (1987)). Equitable liens arise either by contract or by implication. *Rolfe*, 860 P.2d at 1157. When a contract does not exist, the court may imply an equitable lien to avoid unjust enrichment. *Id.* The lien is generally effective as against all persons except for bona fide purchasers for value. Herbert Thorndike Tiffany, *The Law of Real Property* § 1568 (3rd ed.1939).

[¶ 16] Before an equitable lien can be imposed, four requirements must be present:

(1) a duty or obligation from one person to another; (2) a res to which that obligation attaches; (3) which can be identified with reasonable certainty; and, (4) an intent that the property serve as security for that purpose.

*Rolfe*, 860 P.2d at 1157. Generally, an equitable lien will be implied when one party has paid another party's liabilities or debts that are owed on certain, identifiable property. *Id.* Additionally, when a party advances money to another "under an agreement or circumstances showing that it was the intention of the parties to pledge [certain] property as security for the advancements," equitable liens have been imposed. *Rolfe*, 860 P.2d at 1158 (quoting 53 C.J.S. *Liens* § 8(c) at 469 (1987)). These theories hold true even when the parties are mistaken as to who possessed title to the property: "Where a person lends money to another who contracts to use the money for the discharge of a lien upon property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if, unknown to him, the property was not owned by the other or was subject to a junior lien." *Restatement of the Law of Restitution* §§ 43(3) and 54(3) (1937).

[¶ 17] Following these equitable principles of law, we hold that the trial court did not err when it imposed an equitable lien on the property in favor of the uncle. The father requested aid from his uncle, and, on the last day of the redemption period, the uncle provided the money that allowed him to redeem this property. When the father and the uncle entered into the agreement wherein the father agreed to quitclaim the property to the uncle in exchange for his assistance, they demonstrated their intent to create an obligation on the part of the father to repay his uncle as well as their intent for the property to serve as security for their agreement even though in making this agreement, the father and the uncle were under the reasonable but mistaken impression that the father would hold title to the property after the redemption. Given the circumstances in this particular case, we are compelled to affirm that portion of the trial court's order that granted the uncle an equitable lien in the property in the amount that he put up for its redemption.

[¶ 18] Reversed in part and affirmed in part.