# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 106

APRIL TERM, A.D. 2021

September 30, 2021

WILLIAM K. MARTIN and CONSOLIDATED
REALTY GROUP, INC., a Utah corporation,

Appellants
(Plaintiffs),

v.

SECURITY STATE BANK, a Wyoming
corporation; WAYMAN LAND & LIVESTOCK,
LLC; RICHARD KEHOE WAYMAN and
PAULETTE WAYMAN,

Appellees
(Defendants).

S-21-0049

*Appeal from the District Court of Big Horn County*
*The Honorable Bill Simpson, Judge*

*Representing Appellants:*

*Richard R. Thomas, Smith LC, Mesa, Arizona. Argument by Mr. Thomas.*

*Representing Appellee, Security State Bank:*

*James R. Belcher, Crowley Fleck PLLP, Casper, Wyoming. Argument by Mr. Belcher.*

*Representing Appellees, Wayman Land & Livestock, LLC, Richard Wayman, and Paulette Wayman:*

*No appearance.*

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]    William K. Martin loaned his friends, Richard and Paulette Wayman, $100,000 to make a down payment on a ranch.  The Waymans defaulted on their mortgage and the lender, Security State Bank (SSB), sold the property at a foreclosure sale.  The Waymans never repaid Mr. Martin.  In an effort to recover the $100,000 down payment, Mr. Martin sued SSB asserting a first priority equitable lien on the ranch property.  The district court granted summary judgment in favor of SSB.  Mr. Martin appealed, arguing there are genuine issues of material fact regarding the existence and priority of an equitable lien, and that the district court improperly converted a Rule 12 motion to dismiss into a Rule 56 motion for summary judgment.  We affirm.

## *ISSUES*

[¶2]    Mr. Martin raises several issues, but the first two are dispositive.  We rephrase them as follows:

>   I.    Did the district court erroneously convert SSB's motion to dismiss into a motion for summary judgment?

>   II.   Did the district court err when it determined that, even if Mr. Martin had an equitable lien, there is no genuine issue of material fact regarding SSB's superior priority mortgage on the ranch property?

## *FACTS*

[¶3]    We view the record in the light most favorable to Mr. Martin. *James v. James*, 2021 WY 96, ¶ 23, 493 P.3d 1258, 1264-65 (Wyo. 2021) (quoting *Candelaria v. Karandikar*, 2020 WY 140, ¶ 11, 475 P.3d 548, 551 (Wyo. 2020)).  In late 2014, William K. Martin loaned his friends, Richard and Paulette Wayman, $100,000 to use as an earnest money down payment on a ranch in Big Horn County, Wyoming.  In return, the Waymans orally promised Mr. Martin a lien on the ranch.  The email Mr. Wayman sent memorializing the loan agreement, however, does not mention a lien.[1]  In early 2015, the Waymans obtained a mortgage from SSB for the rest of the purchase price, around $2.5 million, and SSB perfected its lien by recording the mortgage in the real estate records.  Mr. Wayman told SSB he borrowed the down payment from Mr. Martin but did not

---

[1] Mr. Wayman sent the email on December 22, 2014.  The subject of the email is "Promissory Note."  It reads: "I Richard Kehoe Wayman promise to repay Bill Martin $100,000.00 he transferred to an escrow account on my behalf on October 7, 2014.  Additionally I agree to pay balance as well as 10% interest on or before June 1, 2015."

1

indicate that he had promised Mr. Martin a lien against the ranch to secure the loan. The loan was redocumented in 2017. The loan documents signed by the Waymans state they will do whatever necessary to protect SSB's security interest against other claims. The corporate president/chief credit officer also submitted an affidavit which stated SSB required its loans to be first priority.

[¶4]    On May 29, 2018, Mr. Martin recorded a lien statement with the county clerk for the first time. The Waymans defaulted on the mortgage, and SSB gave notice of its intent to foreclose on the ranch in July 2018. In August 2018, Mr. Martin sued the Waymans personally for breach of contract, alleging they had not repaid the $100,000 loan as required, and he received a default judgment. In 2019, SSB held a mortgage foreclosure sale at which it purchased the ranch. In July 2020, Mr. Martin filed the current action seeking a declaratory judgment finding: 1) he has an equitable lien, equitable mortgage, or equitable purchase money mortgage on the property; 2) that SSB's foreclosure notice violated the controlling statute; and 3) asking the court for an injunction preventing SSB from disposing of any portion of the ranch. He also sought judicial foreclosure of his equitable lien on the property and a judgment of $100,000 plus interest. SSB filed a combined motion to dismiss and motion for summary judgment. The district court converted the entire motion to a motion for summary judgment and granted summary judgment in favor of SSB. Mr. Martin appealed.

## *DISCUSSION*

[¶5]    Whether the district court properly converted SSB's combined motion to dismiss and motion for summary judgment into a motion for summary judgment is a threshold question that determines our standard of review for the substantive issue presented in this appeal. *Inman v. Boykin*, 2014 WY 94, ¶ 11, 330 P.3d 275, 279 (Wyo. 2014).

## I.    *Mr. Martin Had Notice the District Court Was Going to Consider the Motion under the Summary Judgment Standard*

[¶6]    SSB filed a combined motion to dismiss and motion for summary judgment to which it attached nearly 100 pages of exhibits—including but not limited to affidavits. Mr. Martin responded to the motion and attached nearly forty pages of his own exhibits. In its decision, the district court noted that both parties attached numerous documents to their pleadings, and it considered those documents in reaching its decision, therefore the court "review[ed] the case under the rules regarding motions for summary judgment."

[¶7]    If a party presents matters outside the pleadings in a Rule 12(b)(6) or (c) motion to dismiss, and the court considers them, "the motion must be treated as one for summary judgment under Rule 56." W.R.C.P. 12(d). If the court considers affidavits, the conversion is automatic. *Inman*, 2014 WY 94, ¶ 15, 330 P.3d at 280. If the court

considers materials other than affidavits, it "may still treat the motion as one for summary judgment, but the record must demonstrate that the parties had notice of the conversion and that the nonmovant had an opportunity to respond." *Id.* (quoting *Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 7, 297 P.3d 110, 113 (Wyo. 2013)).

> The conversion of a Rule 12(b)(6) motion into a summary judgment need not be by written order, but the record must adequately demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity afforded to the non-moving party to present, by way of affidavit or otherwise, anything necessary to rebut the contention of the moving party.

*Torrey v. Twiford*, 713 P.2d 1160, 1163 (Wyo. 1986) (cleaned up) (quoting *Kimbley v. City of Green River*, 642 P.2d 443, 445 (Wyo. 1982)). This approach follows the many federal court cases that have excused "the absence of formal notice . . . when it is harmless or when the parties were otherwise apprised of the conversion or the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.), Westlaw (database updated April 2021); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) ("Notice to the parties is required to prevent unfair surprise when a judge converts a 12(b)(6) motion into a Rule 56 motion. . . . Because Mr. Arnold submitted material beyond the pleadings in opposition to defendant's motion, he is scarcely in a position to claim unfair surprise or inequity.").[2]

[¶8]   While the district court did not give formal notice of its intent to convert the motion, Mr. Martin had plenty of notice that the court would decide it under the summary judgment standard. SSB attached numerous documents to its initial motion. In his response to SSB's motion, Mr. Martin set forth the summary judgment standard as one of the legal standards, asserted, "[f]or the reasons that follow, SSB is not entitled to summary judgment," analyzed SSB's arguments under both the 12(b)(6) and summary judgment standards, and attached documents of his own. Further, at the hearing on SSB's motion, counsel for SSB stated: "[A]t the time that [SSB] filed its original motions, it did file a Motion to Dismiss. . . . But, . . . because [SSB] has applied . . . factual information, it's going to ask that the Court consider its arguments . . . on a Motion for Summary Judgment." Mr. Martin did not object to SSB's request or argue he

---

[2] "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *Carroll v. Gibson*, 2021 WY 59, ¶ 9 n.5, 485 P.3d 1004, 1007 n.5 (Wyo. 2021) (quoting *Gunsch v. State*, 2019 WY 79, ¶ 15 n.4, 444 P.3d 1278, 1282 n.4 (Wyo. 2019)).

did not have sufficient notice to respond to SSB's attachments. Rather, he implicitly agreed to the summary judgment standard when he started his argument by asking the court to strike the arguments SSB made in its reply brief because "[i]t is improper to raise summary judgment arguments like that for the first time on a Reply Brief" and by making factual arguments to the court.

[¶9]   On appeal, Mr. Martin argues that he did not have notice the district court would consider the equitable lien and priority issues under the summary judgment standard. However, in addition to his general assertion that SSB was not entitled to summary judgment on any of its arguments, he specifically responded to the equitable lien and priority issues by discussing disputed facts and referencing multiple documents attached to his response as support. Further, at the hearing on SSB's motion, Mr. Martin argued that there was a factual question regarding the establishment of an equitable lien and then discussed the facts at issue in support of his position. Mr. Martin had notice that the court would decide the motion under the summary judgment standard, had the opportunity to present documentation to counter SSB's motion, and did present documentation in support of his position. The district court did not erroneously convert the motion.

[¶10]  SSB requests this Court certify Mr. Martin had no reasonable cause for appeal on this issue and award its reasonable attorney fees pursuant to Wyoming Rule of Appellate Procedure 10.05(b). "Rule 10.05 sanctions 'are generally not available for challenges to discretionary rulings, unless an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Lemus v. Martinez*, 2021 WY 66, ¶ 40, 486 P.3d 1000, 1012 (Wyo. 2021) (citations omitted). Here, Mr. Martin presented cogent argument supported by pertinent legal authority and adequately cited to the record. We deny SSB's request for appellate attorney fees and costs.

## II.     SSB Did Not Have Inquiry Notice of Mr. Martin's Equitable Lien

### A.     Standard of Review

[¶11]  Because the district court properly converted SSB's combined motion to dismiss and motion for summary judgment into a motion for summary judgment, we review it under our well-established standard. "We review the district court's order granting summary judgment de novo and can affirm on any legal grounds provided in the record." *Page v. Meyers*, 2021 WY 73, ¶ 9, 488 P.3d 923, 926 (Wyo. 2021) (citations omitted).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage

4

point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Id.* (quoting *Burns v. Sam*, 2021 WY 10, ¶ 7, 479 P.3d 741, 744 (Wyo. 2021)).

## B.  SSB Did Not Have Inquiry Notice of Mr. Martin's Alleged Equitable Lien

[¶12]  Mr. Martin asserts there are genuine issues of material fact regarding the existence and priority of his equitable lien. He contends five material facts support his argument that SSB had inquiry notice of his claimed equitable lien. First, he asserts the Waymans needed his $100,000 to get the loan, and he required a lien on the ranch as security for the loan. Second, he alleges the Waymans agreed to his terms for the loan. Third, he argues Mr. Wayman contacted the bank and told it about the loan, and the bank agreed Mr. Martin's $100,000 loan could constitute the earnest money down payment—thus, SSB had knowledge the Waymans borrowed the down payment from Mr. Martin. Fourth, Mr. Martin asserts he wired First American Title Insurance Company $100,000 pursuant to the agreement. Finally, Mr. Martin argues that SSB knew he loaned the Waymans the money and never made any inquiry about the terms—if it had, it would have learned of the lien.

[¶13]  An equitable lien is "a right, not recognized at law, which a court of equity recognizes and enforces as distinct from strictly legal rights, to have a fund or specific property, or the proceeds, applied in full or in part to the payment of a particular debt or demand." *Jessen v. Jessen*, 2002 WY 33, ¶ 15, 41 P.3d 543, 547 (Wyo. 2002) (quoting *Rolfe v. Varley*, 860 P.2d 1152, 1157 (Wyo. 1993)). A party asserting an equitable lien must prove four elements: "(1) a duty or obligation from one person to another; (2) a res to which that obligation attaches; (3) which can be identified with reasonable certainty; and, (4) an intent that the property serve as security for that purpose." *Jessen*, 2002 WY 33, ¶ 16, 41 P.3d at 547 (quoting *Rolfe*, 860 P.2d at 1157). Here, the Waymans' answer to Mr. Martin's complaint admitted that the loan was to constitute a security interest. Viewing the evidence in the light most favorable to the non-moving party, we may conclude there is a genuine issue of material fact about the existence of an equitable lien. The more difficult hurdle is whether SSB had inquiry notice of the lien.

[¶14]  In Wyoming, "[a] mortgagee is considered to be a purchaser entitled to bona fide purchaser protection." *Wyo. Bank & Tr. v. Haught*, 2003 WY 111, ¶ 9, 76 P.3d 301, 305 (Wyo. 2003) (citing *First Interstate Bank of Sheridan v. First Wyo. Bank*, 762 P.2d 379, 382 (Wyo. 1988)). "A bona fide purchaser is protected against infirmities in a deed

which would render the deed voidable." *First Interstate Bank*, 762 P.2d at 382. To attain bona fide purchaser status, the purchaser must show he or she is: "(1) a purchaser in good faith; (2) for valuable consideration (not a gift); (3) with no actual, constructive, or inquiry notice of any alleged or real infirmities in the title; and (4) prejudiced by cancellation or reformation of the instrument." *Haught*, 2003 WY 111, ¶ 9, 76 P.3d at 305 (citing *First Interstate Bank*, 762 P.2d at 382). The parties agree that three of the elements apply to SSB. The only question is whether SSB had inquiry notice of Mr. Martin's alleged equitable lien. A party has inquiry notice when it has "knowledge of facts so informing that a reasonably cautious person would be prompted to inquire further." *Haught*, 2003 WY 111, ¶ 10, 76 P.3d at 306 (citing *Bummer v. Collier*, 864 P.2d 453, 458 (Wyo. 1993)). It consists of two parts: first, "extraneous or secondary facts that suggest a genuine potential for a title defect"; and second, that "a reasonable inquiry based on the existence of those facts would disclose a claim by another person to the title of the property." *Haught*, 2003 WY 111, ¶ 10, 76 P.3d at 307.

[¶15] In *Haught*, Ms. Haught received a lien on two tracts of land in exchange for vacating a default judgment against a father and son contracting company. *Id.* at ¶ 3, 76 P.3d at 303. Later, the father transferred ownership of the tracts to his son and Wyoming Bank and Trust loaned the company money to develop the subdivision in exchange for liens on all the tracts of land. *Id.* at ¶¶ 4-5, 76 P.3d at 303-04. The father submitted a financial statement that showed the son owned the property and there were no liens against it. *Id.* at ¶ 5, 76 P.3d at 304. Then, Ms. Haught sued the company for fraudulent conveyance of the disputed tracts. *Id*. at ¶ 3, 76 P.3d at 303. Later, the company defaulted, and the bank foreclosed the property. Ms. Haught was named as a creditor of the company in the foreclosure action. Ms. Haught asserted the bank's mortgage did not have priority because it had inquiry notice of her lien. *Id.* at ¶ 6, 76 P.3d at 304.

[¶16] We held the bank did not have inquiry notice because Ms. Haught did not record her claimed judgment until six days after the bank recorded its final consolidated mortgage. Further, at no point when the bank was issuing the mortgages did Ms. Haught assert a claim against the disputed tracts. *Id.* at ¶ 12, 76 P.3d at 307. We found that even if the bank was on notice that the transfer of the property to the son was fraudulent, that fact only triggered a duty to investigate. And had the bank investigated, it would have only discovered a possible claim on the property through a judgment lien. We concluded that "the ultimate question . . . is not the wisdom of the Bank's business decision to lend money to [the company]; it is whether a reasonable investigation would have disclosed a claim by Haught to the title to [the property]." *Id.* at ¶ 14, 76 P.3d at 308.

[¶17] In *Grose v. Sauvageau*, we determined there was no inquiry notice in a dispute over land between feuding neighbors. 942 P.2d 398 (Wyo. 1997). The Groses possessed and made improvements on the property in question. We found that while Ms. Sauvageau "was well aware that the Groses had possession of the property and had

6

made improvements upon it, she diligently searched the records only to discover that the Groses' possession of the property was entirely consistent with the rights of the record owner." *Id.* at 403. We held Ms. Sauvageau did not have a duty to search further because the Groses' possession of the property was "fully explained in the public records." *Id.* On the other hand, in *North American Uranium, Inc. v. Johnston*, we determined there was inquiry notice because the lawyer who drafted and witnessed the first conveyance informed the subsequent purchasers about the initial conveyance and that there would be a controversy over title to the property. 316 P.2d 325, 345 (Wyo. 1957). Despite this warning, the subsequent purchasers did nothing to investigate the initial conveyance. *Id.* at 345-46. We held that the subsequent purchasers had inquiry notice. *Id.*

[¶18] This case is more like *Haught* and *Grose* than *North American Uranium*. Mr. Martin did not record his interest in the property until three years after the bank issued its mortgage. Thus, any record or title search would not show a lien on the property. Further, we have not placed a heavy burden on the purchaser to investigate extraneous facts:

> the standard should be reasonableness from the perspective of the ordinary person purchasing real estate in the purchaser's situation at the time of the purchase. . . . A more exacting standard would give unwarranted protection to prior unrecorded interests at the expense of subsequent purchasers, contrary to the general purpose of the recording acts.

2003 WY 111, ¶ 10, 76 P.3d at 306-07 (quoting 14 Powell on Real Property, § 82.02[1][d][iii] (footnotes omitted)). SSB knew of Mr. Martin's loan to the Waymans and knew that the loan was for the down payment on the ranch. If SSB had seen the email "Promissory Note," it would have seen no mention of a lien. SSB's loan to the Waymans required them to defend the bank's priority against any adverse claims against the title and required the bank's mortgage to have first priority. It would be unreasonable to expect a purchaser in that situation to inquire further into the comparatively small loan from a friend for the down payment. SSB did not have inquiry notice of Mr. Martin's equitable lien.

*CONCLUSION*

[¶19] The district court did not err when it converted SSB's combined motion to dismiss and motion for summary judgment into a motion for summary judgment. Because SSB did not have inquiry notice, it is entitled to bona fide purchaser protection against Mr. Martin's claimed equitable relief. The district court did not err in granting SSB's motion for summary judgment. We deny SSB's request for attorney fees.

7